Affidavit of Karl Larson in Support of Forfeiture in Rem

<u>Affiant's Experience & Knowledge</u>

1.  I, Karl P. Larson, your affiant, first being duly sworn, hereby depose and state that I am currently employed as a Special Agent with Internal Revenue Service, Criminal Investigation (IRS-CI), assigned to the Nashville Field Office, Louisville Post of Duty.  I have been so employed by the IRS-CI since March 2001.  Prior to joining IRS-CI, I was a Financial Analyst with the FBI from 1998 through 2001.  I have received extensive training at the Federal Law Enforcement Training Center (FLETC) relating to general investigative techniques, which included the laws relating to search and seizure.  I have also received extensive training in the legal principles and statutes as they relate to criminal violations of Internal Revenue laws and related financial crimes such as money laundering, currency violations, as well as other criminal laws.

2.  As a Special Agent, I have conducted and participated in numerous investigations involving allegations of distribution of controlled substances (narcotics trafficking) and conspiracy, in violation of 21 U.S.C. §§ 841 and 846; continuing criminal enterprises, in violation of 21 U.S.C. § 848; as well as financial crimes including, but not limited to money laundering, in violation of 18 U.S.C. §§ 1956 and 1957; and violations of the Internal Revenue Code, Title 26.

3.  I am familiar with the methods, routines and practices of narcotics traffickers.  I have participated in numerous seizures and forfeitures of property when such property was used to facilitate the narcotics trafficking or when such property was traceable to proceeds of narcotics trafficking or involved in money laundering.

4.   Through my training, investigative experience and conversations with other law enforcement personnel, I have become familiar with methods used by narcotics trafficking organizations to safeguard and distribute controlled substances, and to collect and launder the proceeds of narcotics trafficking.

5.   Narcotics trafficking organizations often amass large sums of currency from their illegal narcotics trafficking and other related criminal activities.  The individuals engaged in these illegal activities will attempt to "launder" their illegal profits; which is an attempt to make the illegal profits appear to be from legitimate, or legal, sources to prevent prosecution, avoid seizure and forfeiture of their ill-gotten gains and to evade tax liabilities.  These attempts to "launder" the proceeds of illegal activity may utilize banking facilities, the purchase of cashier's checks, wire transfers of funds, bank money drafts, the use of currency to purchase large amounts of assets, the establishment of phony or "shell" corporation; the use of nominees to hold title to assets, and/or establishment of business "fronts".

6.   I know the distribution, manufacture and sale of illegal narcotics is a violation of the Controlled Substances Act and is, therefore, a Specified Unlawful Activity (SUA) according to 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C. § 1961(1).

7.   I am also familiar with the following violations of federal law:

   a.    18 U.S.C. § 841. "..it shall be unlawful for any person knowingly or intentionally – (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2)

to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance"

b.   18 U.S.C. § 846 - "Any person who attempts or conspires to commit any offense defined in the subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

c.   18 U.S.C. § 1956 – "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity;...knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the locations, the source, the ownership, or the control of the proceeds of specified unlawful activity; or to avoid a transaction reporting requirement under State or Federal law."

d.   18 U.S.C. § 1957 – "Whoever, (1) knowingly engages in or attempts to engage in a monetary transaction; (2) knowledge that the property involved in the monetary transaction is from criminally derived property; (3) property involved is of a value greater than $10,000; and (4) property involved in the monetary transaction is derived from specified unlawful activity."

8.   The facts set forth in this affidavit are intended to establish probable cause for the assets subject to forfeiture in this Complaint (defendant property), and does not set forth all

of the knowledge of your affiant regarding this matter.  This information in this affidavit is based upon your affiant's knowledge and review of records obtained during the course of this investigation (as of the date of this affidavit), in addition to information provided by other law enforcement officers and agents.

Criminal Activity – Summary

9.   Based on information and evidence discovered in the course of an investigation conducted by your affiant, the Internal Revenue Service, Drug Enforcement Administration (DEA), detectives from the Louisville Metropolitan Police Department, and other law enforcement officers, which is discussed in greater detail below, Dante WATTS is a large-scale narcotics trafficker in the Louisville metro area.  WATTS, along with Ismael Gonzalez, Carlos Catalan, Kiniki Lucas, Ariel Cruz, Joelie Johnson (WATTS' sister) and Oscar Argueta engaged in the distribution of cocaine, methamphetamine and heroin in violation of 21 U.S.C. § 841; used a communication facility to facilitate the distribution of controlled substances in violation of 21 U.S.C. § 843(b); and/or conspiracy in violation of 21 U.S.C. § 846.  In furtherance of this illegal activity, Dante D. WATTS, Joelie Johnson and possibly others, committed money laundering in violation of 18 U.S.C. § 1956, monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957, and conspiracy in violation of 18 U.S.C. § 1956(h).  On July 6, 2016, a grand jury indicted Gonzalez, WATTS, Catalan, Lucas, Cruz, Johnson and Argueta with conspiracy to possess with the intent to distribute cocaine (5 kilograms or more), methamphetamine (50 grams or more) and heroin (1 kilogram or more) in violation of Title 21, United State Code 841 and 846 (a)(1).

10. WATTS' prior felony convictions include but are not limited to:

- Drug trafficking in Case No. 90-CR-001531 in Jefferson Circuit Court, the result of which WATTS, in 1991, was sentenced to (5) years probated for five (5) years;

- Trafficking in cocaine in Case No. 10D02-9401-CF-003 in Clark County Superior Court in Indiana, the result of which WATTS, in 1994, was sentenced to forty-five (45) years prison. On or about October 31, 2008, this forty-five (45) year sentence was reduced to thirty-two (32) years;

- Assault II in Case No. 10CR2012 in Jefferson Circuit Court, the result of which WATTS, in March 2011 was sentenced to seven (7) years, and was released from prison in August of 2013.

11. According to Jefferson County Kentucky Circuit Court records, on or about January 15, 2015, Dante WATTS and another person were indicted for trafficking more than five pounds of marijuana, a felony; tampering with physical evidence, a felony; illegal use or possession of drug paraphernalia, a misdemeanor; and persistent felony offender. This indictment resulted from acts occurring on or about October 30, 2013. On or about August 2, 2016, these charges against Dante WATTS, but not the other person charged, were dismissed based upon WATTS' pending Federal Court charges.

<u>CURRENT INVESTIGATION</u>

12. Beginning in March of 2016 through July 2016, the Drug Enforcement Administration Louisville District Office (LDO), the Internal Revenue Service, with the assistance of the Louisville Metro Police Department (LMPD), obtained a series of court authorized wire interceptions involving local heroin and crystal Methamphetamine traffickers operating

within, but not limited to Louisville, KY.  To date, the LDO has obtained authority to intercept communications over eight separate cellular phone utilized by individuals acquiring and selling illegal narcotics.

13.   The investigation has led to the identification of Ismael Gonzalez as a large quantity methamphetamine trafficker, with sources of supply around the southwestern border and Mexico.  Based on intercepted calls the LDO identified two cellular telephones that Gonzalez was using to coordinate the shipment and delivery of narcotics shipments.

14.   To date interceptions have provided information about Gonzalez's narcotics activities, including but not limited to Dante WATTS.  Specifically, on May 7, 2016, Gonzalez instructed members of his organization to meet Oscar Argueta at a business in the vicinity of Brooks Road and Interstate-65, where they retrieved thirty-eight (38) pounds of crystal methamphetamine, which Argueta had transported from the Southwest border.

15.   Upon receipt of the methamphetamine, members of the Gonzalez organization took the 38 pounds of methamphetamine to a body shop located in Louisville, Kentucky which is rented by Carlos Catalan.  At that time, the LDO believes that Catalan loaded the 38 pounds of crystal methamphetamine, along with an additional eleven (11) pounds, which he was already in possession of, into a stash vehicle, which was utilized to conceal the narcotics during transport.

16.   Once the vehicle was loaded with the 49 pounds of crystal methamphetamine, it was provided to Dante WATTS.

17.   Between May 12 and July 1, 2016, the LDO had intercepted a series of communications over Gonzalez's cellular telephones in which he, WATTS, Carlos Catalan and Gonzalez's

unidentified source of supply had discussed the shipment of approximately $600,000 worth of suspected crystal methamphetamine and cocaine to Louisville, KY.  During this time, both Gonzalez and WATTS traveled to Houston, TX in order to test the crystal methamphetamine before it was shipped to Louisville, KY.  On this trip to Houston, WATTS was accompanied by Kiniki Lucas who rented the hotel rooms at the Best Western Astor Suites in Houston.

18.   On July 1, 2016, Gonzalez's received a text from his source of supply indicating that "the airplane parts are going to set sail."  Based on this conversation, as well as previously intercepted calls, the LDO knew "airplane parts" to be a reference for cocaine.  Following this conversation, Gonzalez contacted WATTS, and informed him of the pending shipment, and informed him that he needed to collect a large sum of money and get it to him as soon as possible.

19.   At approximately 22:02 hours, the LDO intercepted a conversation between Gonzalez and a member of WATTS' organization in which WATTS had sent this individual with approximately $400,000 in US Currency to the shop owned by Catalan.  It is Affiants belief that Ariel Cruz had met WATTS' associate at the shop and retrieved the $400,000.

20.   On July 2, 2016, at approximately 9:28 hours, Gonzalez placed an outgoing call to an unidentified male with a Texas area code.  During this conversation, the unknown male informed "the man is like an hour away."  Based on this conversation, it was believed that the unknown male had informed Gonzalez that Argueta would be arriving in Louisville in approximately one hour with a shipment of narcotics.

21.   On July 2, 2016, at approximately 11:00 hours, members of the DEA LDO observed Argueta's tractor-trailer traveling northbound on Interstate-65 near the Bardstown exit.

Surveillance was maintained on the truck until its arrival at the Pilot gas station, 2050 E. Blue Lick Road, Shepherdsville, KY.  Surveillance was maintained for a period, until Argueta pulled out of the Pilot, and merged back onto Interstate-65 northbound.

22.   Surveillance then followed Argueta to 6309 Strawberry Lane, Catalan's body shop, where surveillance observed Cruz opening the gate for Argueta.  Surveillance then observed Argueta backing into 6309 Strawberry Lane.

23.   At the time, members of the DEA and LMPD executed a search warrant at 6309 Strawberry Lane, where Argueta, Cruz and Catalan were detained.

24.   In a subsequent search of Argueta's tractor-trailer, members of the LDO discovered approximately thirty-one (31) kilograms of cocaine, which were in the three separate bags laying on the bed in the cab, along with six (6) kilograms of heroin, which was hidden behind two separate speakers in the cab area of the truck.  Following the seizure, members of law enforcement arrested Argueta, Catalan and Cruz, and transported them to DEA LDO for criminal processing.

25.   A short time later, Gonzalez was stopped leaving his residence, which is located on Scott Court, Louisville, Kentucky, and subsequently placed under arrest.  Gonzalez was then transported to the DEA LDO for criminal processing.

26.   Members of the Louisville Metro Police Department located Dante WATTS at the St. Matthews Mall, where he was arrested without incident, and taken to the DEA LDO for criminal processing.

27.   In a subsequent search of a commercial building located at Davids Drive, Shepherdsville, KY, members of law enforcement located a 2014 GMC Acadia which on the

premises.  A search of this vehicle revealed a suitcase in the back seat which contained a large amount of US Currency, later determined to be $349,820.00.  Ismael Gonzalez purchased this 2014 GMC Acadia on or about June 2, 2016.  Ismael Gonzalez obtained the real property at Davids Drive, Shepherdsville, KY from Maricela Guerra Botiel on or about January 27, 2016 by Quit Claim Deed.

28.   During a search of the residence located on Urton Woods, Louisville, KY, which has been leased by Joelie Johnson since October 2014 and is believed to be a stash location utilized by WATTS, law enforcement discovered a large sum of US Currency, which was later determined to be $195,810.00, in the master bedroom closet.  Law enforcement also seized approximately one pound of crystal methamphetamine in the residence.  A 2009 Mercedes-Benz E350, which was parked in the driveway of the residence at the time of the search, was towed away by law enforcement.  During a subsequent search of this vehicle another large sum of US Currency was discovered, later determined to be $230,085.00 in a safe in the trunk of this vehicle.  On or about March 3, 2015, Joelie Johnson purchased the 2009 Mercedes E350 for $5,000.

29.   During a search of a residence located on Bay Pointe Court, Louisville, KY, which is a residence leased by Kiniki Lucas and is believed to be utilized by WATTS as a stash location, members of law enforcement seized approximately one pound of cocaine, along with approximately one pound of heroin, which was discovered in a master bedroom closet, which contained Lucas' clothing.  During initial questioning, Lucas informed that the residence was hers, however upon the discovery of the narcotics, Lucas stated she was unaware as to whose residence it was.  Also found during the search of this residence was

$2,448 in U.S. currency on the nightstand in the upstairs bedroom and in a shoe box in the upstairs bathroom closet.  Subsequent to the discovery of narcotics, Lucas was placed under arrest and the DEA LDO for criminal processing.

## Reported Funds from Sources Other Than Narcotics Trafficking

30.  As stated earlier, Dante WATTS was incarcerated during March 14, 2011 through August 1, 2013.   Based upon records reviewed to date, WATTS had no IRS filings, which would include wage statements, Forms 1099, or returns for the tax years 2010 through 2013.  Dante WATTS did file federal income tax returns for 2014 and 2015.  What he reported on his tax returns are summarized below:

| Particulars | 2014 | 2015 | Totals |
|---|---|---|---|
| Wages | $0 | $0 | |
| Nashville Cleaning Services Net Profit/Loss | $52,105 | $44,582 | |
| Rental Net Profit/Loss | $0 | $44,183 | |
| Total Income | $52,105 | $88,765 | $140,870 |
| Nashville Cleaning Services Gross Receipts | $79,664 | $60,313 | $139,977 |
| Rental Gross Receipts | | | |
| 2109 Date St | | $8,400 | |
| 1715 W Gaulbert | | $7,200 | |
| 3426 Grand Ave, front | | $7,200 | |
| 3426 Grand Ave, rear | | $6,000 | |
| 513 Amy Ave | | $28,800 | |
| Total Rents Received | | | $57,600 |

One of the aforementioned rental properties reported on Dante WATTS' 2015 return, 1715 W. Gaulbert Avenue, Louisville, Kentucky, was purchased by Shavonda S. Hill on or about April 29, 2010.  As of October 17, 2016, according to Jefferson County records, Shavonda S. Hill was still the owner of record.

31.   These tax returns show that Dante WATTS, from the beginning of 2014 through the end of 2015, reported that he had gross receipts of $139,977 from his cleaning business and gross receipts of $57,600, from his rental properties totaling $197,577.

32.   These tax returns also show that Dante WATTS, from the beginning of 2014 through the end of 2015, reported that he had income of $52,105 in 2014 and income of $88,765 in 2015, totaling $140,870.  There was no income reported from either wages, commission, fees or gambling winnings.

33. On or about October 20, 2014, Nashville Cleaning Services was incorporated with the Kentucky Secretary of State.  WATTS was listed as the registered agent.  The Kentucky Secretary of State administratively dissolved Nashville Cleaning Services on or about September 12, 2015.

34.   Records obtained from financial institutions during the course of this investigation show that Dante Watts maintained five bank accounts for some period of time during August 1, 2013 through July 11, 2016; three bank accounts at PNC and two bank accounts at Kentucky Telco Credit Union.  During 2013 through the end of 2015, deposits into these five bank accounts totaled approximately $779,785.61, which is more than three times Dante WATTS' total business gross receipts reported for that same period of time.  Approximately

$315,749.65 of the aforementioned $779,785.61 in total deposits was currency, which is more than one and one half times Dante WATTS' total income reported for that same period of time.

35.  During 2016, deposits into Dante WATTS' five bank accounts totaled approximately $320,136.55.

36.  Joelie Johnson filed federal income tax returns for 2013 through 2015.  What she reported on these tax returns is summarized below:

| Particulars | 2013 | 2014 | 2015 | Totals |
|---|---|---|---|---|
| Wages | $866.00 | $0.00 | $0.00 | $866.00 |
| Sch. C  Profit | $13,367.00 | $14,607.00 | $13,902.00 | $41,876.00 |
| Total Income | $14,233.00 | $14,607.00 | $13,902.00 | $42,742.00 |
| Sch. C. Gross Receipts | $16,388.00 | $15,477.00 | $13,902.00 | $45,767.00 |

Joelie Johnson also received federal income tax refunds during calendar years 2013 through 2016, based largely upon earned income credit, in the amount of $5,390 in 2013; $5,656 in 2014; $5,366 in 2015 and $5,206 in 2016.

37.  According to Louisville Metro Housing records, Joelie Johnson filed applications for housing assistance and subsequent renewal applications on or about July 17, 2014; September 4, 2015; and October 4, 2016.  These applications show Johnson's "household" consisted of three or four minor children, one of which is disabled, and one other adult (JM).  These records also indicate the reported annual household income, which consisted of Johnson's child support, Johnson's social security for the disabled minor and wages

earned by JM was estimated to be $11,589 in 2014, $12,036 for 2015 and $13,996 for 2016.

Joelie Johnson never reported any business income or the ownership of any assets to

Louisville Metro Housing Authority.  Joelie Johnson's reported income, child support, social

security benefits for her disabled minor and the wages of the other adult living in her

household, from the beginning of 2013 through the end of 2015, total approximately

$82,779.

38. Records obtained from financial institutions during the course of this investigation show

that Joelie Johnson maintained eight bank accounts at JPMorgan Chase Bank for some

period of time during 2013 through August 19, 2016.  Three of these bank accounts were

held jointly with minor children.  Account XXX1850, which was opened on or about June 20,

2013, by the sole signator Joelie Johnson, was used for the majority of deposits and

withdrawals made by Joelie Johnson.  During June 20, 2013 through the end of 2015,

deposits into account XXX1850 totaled approximately $324,728.79, which is almost four

times Joelie Johnson's reported total income and household income reported to Louisville

Metro Housing for that same period of time.  Approximately $214,272.38 of the

aforementioned $324,728.79 in total deposits was currency, which is more than four times

Joelie Johnson's total Schedule C business gross receipts reported for that same period of

time.

39. During January 1, 2016 through August 19, 2016, deposits into Joelie Johnson's

JPMorgan Chase Bank account XXX1850 totaled approximately $84,014.25, of which

approximately $73,775 was in currency.

40. On or about February 12, 2014, deed was granted by Randall Berkley to Joelie Johnson for 3393 Hanna Drive, Memphis, Tennessee for $25,000. There was no mortgage recorded related to this purchase.

## Disposition of Funds from Narcotics Trafficking

41. There is probable cause to believe that Dante D. WATTS utilized Joelie Johnson to help launder some of his proceeds from narcotics trafficking. WATTS also utilized multiple casinos to "launder" some of his proceeds from narcotics trafficking. WATTS attempted to accomplish this by purchasing casino chips with currency derived from narcotics trafficking, engaging in gambling and then "cashing in" his chips, being paid by the casino with currency or checks in violation of 18 U.S.C. §§ 1956, 1957 and /or 1956(h).

42. The Financial Crimes Enforcement Network (FinCEN) is the federal agency responsible for maintaining Currency Transaction Reports filed by casinos (CTR-C).

43. An analysis of casino records and 204 CTR-Cs related to the purchase and/or redemption of gaming instruments at casinos with cash or cash instruments, from April 2014 through April 2016, shows that over $4,300,000 worth of gaming instruments were purchased by WATTS, and over $2,300,000 worth of gaming instruments were redeemed by WATTS. According to records obtained from the various casino WATTS patronized, he lost just over $1,100,000 from 2014 through 2016. There were 26 CTR-Cs filed with only cash out transaction detailed, and 121 CTR-Cs where only cash in transactions were detail, and there were 57 CTR-Cs filed with both types of transactions detailed.

44. During 2015 and 2016, WATTS deposited checks from casinos into his bank accounts, totaling $485,235.00

45.   WATTS made a currency deposit for purchase of 513 Amy Avenue on 6/17/14 for

$1,500.00, he later made another deposit for the property on 7/17/14 with a PNC cashier's

check in the amount of $3,942.00, WATTS withdrew at least $9,700.00 in currency on the

same day.   WATTS also submitted two more cashier's checks to finish the purchase, the

first on 10/17/14, with a cashier's check from Stock Yards Bank (remitter Joelie Johnson)

and on 11/17/14, with a cashier's check from JP Morgan Chase $8,707.51 (remitter Joelie

Johnson).  An examination of Johnson's Chase account shows at least $200,000.00 in

currency deposits.   According to her Louisville Housing Authority application for Section 8

dated July 17, 2014, the only income she reported is from child support and social security.

### 513 Amy Avenue, Louisville, Kentucky

46.   On or about December 18, 2014, deed to 513 Amy Avenue, Louisville, Kentucky, was

granted by the Commissioner of the Jefferson Circuit Court to Dante Watts.  The purchase

of this real estate, totaling $16,649.51, was as follows:

| Payment Date | Amount | Method |
| --- | --- | --- |
| 06/07/2014 | $1,500.00 | Currency |
| 07/17/2014 | $3,942.00 | PNC Cashier's check #1116360 - Dante Watts remitter |
| 10/17/2014 | $2,500.00 | Stock Yards Bank Cashier's check #311842 - Joelie Johnson remitter |
| 11/17/2014 | $8,707.51 | JP Morgan Chase Cashier's check #9134105336 - Joelie Johnson remitter |
| Total | $16,649.51 | |

47.   PNC cashier's check 1116360, made payable in the amount of $3,942 may have been

purchased with either funds from a withdrawal of $9,746.63 from Dante Watts' PNC

account XXX1239 on or about July 17, 2014 or currency.  The last seven deposits into Dante

Watts' PNC account XXX1239, prior to the $3,942 withdrawal, are currency totaling $20,100.

48.   Neither Dante Watts nor Joelie Johnson is known to have a bank account at Stock Yards Bank, where Joelie Johnson purchased cashier's check 311842 for $2,500.

49.   JPMorgan Chase cashier's check 9134105336, purchased by Joelie Johnson and made payable in the amount of $8,707.51, was withdrawn from Joelie Johnson's JPMorgan Chase account XXX1850.  The last deposits into Johnson's JPMorgan Chase account XXX1850, prior to the withdrawal of $8,707.51 cashier's check, consisted of twelve currency deposits totaling $11,000 and a deposit of JPMorgan Chase cashier's check 9012705023 purchased by Joelie Johnson on or about November 17, 2014 made payable to Jefferson County Commissioner in the amount of $8,624.37.

50.   JPMorgan Chase cashier's check 9012705023, purchased by Joelie Johnson in the amount of $8,624.37, was not purchased by funds withdrawn from Joelie Johnson's JPMorgan Chase account XXX1850 or Dante Watts PNC account XXX1239.

### 3426 & 3426R Grand Avenue, Louisville, Kentucky

51.   On or about April 14, 2014, deed to 3426 Grand Avenue, Louisville, Kentucky, was granted by Monique Vaughn to Dante Watts.  The purchase of this real estate, totaling $8,350.72, was as follows:

| Payment Date | Amount | Method |
| --- | --- | --- |
| 04/04/2014 | $7,850.72 | PNC Cashier's check #1185410 - Dante Watts remitter |
| 04/04/2014 | $392.50 | Unknown |
| 04/04/2014 | $107.50 | Currency |
| Total | $8,350.72 | |

52.  PNC cashier's check 1185410 in the amount of $7, 850.72, was drawn on Dante Watts'

PNC account XXX1239.  The last six deposits into Watts' PNC account XXX1239, prior to the

withdrawal of the $7,850.72 cashier's check, consisted of an Aguair Law Office PLLC check

for $10,000 payable to Dante Watts and five currency deposits totaling $5,620.

53.  On or about July 14, 2014, check 4694, drawn on Joelie Johnson's JPMorgan Chase

account XXX1850, was made payable to Edison Construction Company in the amount of

$8,000.  The memo notation on the check was 3426 Grand Property.  The last eleven

deposits into Johnson's JPMorgan Chase account XXX1850, prior to the withdrawal of the

$8,000 check, consisted of three currency deposits totaling $12,540 and eight check and

purchase card refunds totaling $2,624.

54.  WATTS purchased 12600 Blackthorn Trace, with two separate cashier's checks, on

4/27/16 WATTS provided Tiffany Goldsmith with a cashier's check drawn on Kentucky Telco

account 0020 for $60,000.00.  WATTS also provided a $12,111.37 cashier's check drawn on

Kentucky Telco account 0020.  Both of these checks were preceded by WATTS depositing a

$100,000.00 check from Casino Aztar dba Tropicana Evansville into the same Kentucky Telco

account.

<u>12600 Blackthorn Trace, Louisville, Kentucky</u>

55.  On or about May 13, 2016, deed to 12600 Blackthorn Trace, Louisville, Kentucky was

granted by Daniel and Jeanine Ash to Dante Watts.  The purchase of this real estate, totaling

$274,111.37, was as follows:

| Payment Date | Amount | Method |
|---|---|---|
| Unknown | $2,000.00 | Unknown |
| 04/27/2016 | $60,000.00 | KY Telco Official Check #0040283424 pay to Weber & Rose or Dante Watts |

| 05/13/2016 | $12,111.37 | KY Telco Official Check #0040285518 pay to Freibert & Mattingly or Dante Watts |
|---|---|---|
| 05/13/2016 | $200,000.00 | Loan from Tiffany Goldsmith |
| Total | $274,111.37 | |

56.   On or about April 27, 2016, Dante Watts purchased a cashier's check, drawn on Kentucky Telco Credit Union checking account XXX9970, for $60,000.  This $60,000 cashier's check was given by Watts to Tiffany Goldsmith, who was providing a $200,000 loan on this real estate purchase.  Goldsmith deposited this $60,000 cashier's check.  On or about May 13, 2016, Goldsmith wire transferred $200,000 and $60,000 to Freibert and Mattingly Title, the closing agent.

57.   On or about May 13, 2016, Watts purchased a cashier's check, drawn on Kentucky Telco Credit Union checking account XXX9970, for $12,111.37.  Watts provided this cashier's check at closing.  The deposits into Watts' Kentucky Telco Credit Union checking account XXX9970, prior to the withdrawals of the two aforementioned cashier's checks for $60,000 and $12,111.37, consisted of an Aztar Indiana Gaming dba Tropicana Evansville check 9174 payable to Dante Watts in the amount of $100,000; a PNC cashier's in the amount of $3,648.42 to close out Dante Watts' PNC savings account XXX9059; a PNC cashier's check in the amount of $20,037.86 to close out Dante Watts' PNC checking account XXX1239; and $7,445.13 in miscellaneous checks.

58.   On or about March 22, 2013 through March 4, 2016 deposits into Dante Watts' PNC savings account XXX9059, prior to the purchase of the $3,648.42 cashier's check to close this account, totaled $3,992.69, of which $3,992 was in currency.

59.  The last three deposits into Dante Watts' PNC checking account XXX1239, prior to the purchase of the $20,037.86 cashier's check to close this account, were two Aztar Indiana Gaming dba Tropicana Evansville checks made payable to Dante Watts; check 9128 in the amount of $10,000; check 9144 in the amount of $20,000; and a $370.33 transfer in from Dante Watts' PNC savings account XXX1059.

### 2109 Date Street, Louisville, Kentucky

60.  On or about April 24, 2014, deed to 2109 Date Street, Louisville, Kentucky was granted by U.S. Bank et al., to Dante Watts.  The purchase of this real estate, totaling $12,232 was paid with PNC cashier's check 1185461 in the amount of $12,232 drawn on Dante Watts' PNC account XXX1239.

61.  The last five deposits into Dante Watts' PNC account XXX1239, prior to the aforementioned $12,232 withdrawal, were currency deposits totaling $15,000.

### 3512 Greenwood Avenue, Louisville, Kentucky

62.  On or about December 15, 2014, deed to 3512 Greenwood Avenue, Louisville, Kentucky, was granted by the Commissioner of the Jefferson Circuit Court to Dante Watts. The purchase of this real estate, totaling $15,535.81, was as follows:

| Payment Date | Amount | Method |
|---|---|---|
| 06/17/2014 | $1,000.00 | Currency |
| 07/17/2014 | $3,534.50 | PNC Cashier's check #1116358-Dante Watts |
| 10/17/2014 | $2,500.00 | Stock Yards Bank cashier's check #311841-Joelie Johnson remitter |
| 11/17/2014 | $8,501.31 | JP Morgan Chase cashier's check #9134105337-Joelie Johnson remitter |
| Total | $15,535.81 | |

63.  PNC cashier's check 1116358, made payable in the amount of $3,534.50 may have been purchased with either funds from a withdrawal of $9,746.63 from Dante Watts' PNC account XXX1239 on or about July 17, 2014 or currency.  The last seven deposits into Dante Watts' PNC account XXX1239, prior to the $3,534.50 withdrawal, are currency totaling $20,100.

64.  Neither Dante Watts nor Joelie Johnson is known to have a bank account at Stock Yards Bank, where Joelie Johnson purchased cashier's check 311841 for $2,500.

65.  JPMorgan Chase cashier's check 9134105337, purchased by Joelie Johnson and made payable in the amount of $8,501.31 was withdrawn from Joelie Johnson's JPMorgan Chase account XXX1850.  The last deposits into Johnson's JPMorgan Chase account XXX1850, prior to the withdrawal of $8,501.31 cashier's check, consisted of twelve currency deposits totaling $11,000 and a deposit of JPMorgan Chase cashier's check 9012705023 purchased by Joelie Johnson  on or about November 17, 2014 made payable to Jefferson County Commissioner in the amount of $8,624.37.

66.  JPMorgan Chase cashier's check 9012705023 purchased by Joelie Johnson in the amount of $8,624.37 was not purchased by funds withdrawn from Joelie Johnson's JPMorgan Chase account XXX1850 or Dante Watts PNC account XXX1239.

67. On or about August 13, 2014, a $2,000 currency deposit was made into Joelie Johnson's JPMorgan Chase account XXX1850.  On or about August 13, 2014, check 1509 was drawn on Joelie Johnson's JPMorgan Chase account XXX1850 payable to Clarence Dawson in the amount of $2000.  The memo notation on this check was 3522 Greenwood Demo.

<u>Dante Watts' Kentucky Telco Credit Union Checking Account XXX9970</u>

68.   On or about August 16, 2013, Dante Watts signed an application to open accounts at Kentucky Telco Credit Union.  This application showed Dante Watts' address as 5909 Permerland Drive, Apartment 2, Louisville, Kentucky, 40219 and his employer as Kaydra Watts.  Kentucky Telco Credit Union issued Dante Watts member number XXX9970 and opened a savings account and checking account number.

69.   On or about July 8, 2016, the U.S. government seized $89,676.89 from Dante Watts' Kentucky Telco Credit Union checking account XXX9970 pursuant to a seizure warrant.  On this same date, Kentucky Telco Credit Union transferred $31,169.45 from Dante Watts' savings account XXX9970 into his checking account XXX9970.  The $31,169.45 from Dante Watts' savings account XXX9970 plus $58,507.44 from Dante Watts' checking account XXX9970 resulted in the $89,676.89 Kentucky Telco Credit Union check being issued to the U.S. government.

70.   The last three deposits into Dante Watts' Kentucky Telco Credit Union savings account XXX9970, prior to the aforementioned $31,169.45 transfer consisted of $4,000 in currency; a $10,000 check drawn on Kentucky Telco Credit Union checking account XXX9970 made payable to Louisville Metro Department of Corrections; and a Morgan & Morgan PLLC check 21392 payable to Richard Maize in the amount of $25,163.40.

71.   During March 22, 2016 through July 8, 2016, the deposits into Dante Watts' Kentucky Telco checking account XXX9970, prior to the seizure of $89,676.69 by the U.S. government, consisted of an Aztar Indiana Gaming dba Tropicana Evansville check 9174 payable to Dante Watts in the amount of $100,000; a PNC cashier's in the amount of $3,648.42 to close out Dante Watts' PNC savings account XXX9059; a PNC cashier's check in the amount of

$20,037.86 to close out Dante Watts' PNC checking account XXX1239; $12,500 in three currency deposits; the aforementioned transfer of $31,169.45 from Dante Watts' Kentucky Telco savings account XXX9970; and $18,845.63 in miscellaneous deposits.

### Breitling for Bentley Motors Special Edition Certified Chronometer Watch

72.   On or about July 8, 2016, during the execution of a search warrant at the residence on Blackthorn Trace, Louisville, Kentucky, a Breitling for Bentley Motors Special Edition Certified Chronometer Watch in 18 karat yellow gold with 596 full cut diamonds was seized from a small dresser in the master bedroom.

73.   A subsequent appraisal of the aforementioned watch by Merkley Kendrick Jewelers placed the fair market value at $38,000.

74.   A representative for Breitling, which manufactured these special edition watches, had no record of Dante Watts purchasing or registering one of these special edition watches.

### Vehicle Purchases from Fidelity Automotive

75.   During 2014 Dante Watts purchased at least twenty-six vehicles from Fidelity Automotive dba Clark County Auto Auction, all with currency, totaling approximately $97,130.50.

76.   One of the aforementioned twenty-six vehicle purchases occurred on or about May 24, 2014, when Dante Watts purchased a 2006 BMW 750l for $13,980 in currency.

77.   One of the aforementioned twenty-six vehicle purchases occurred on or about October 2, 2014, when Dante Watts purchased a 2006 Audi A8 for $10,105 in currency.

### Money Laundering Summary

| Description | Total Amount |
|---|---|
| 178 CTR-Cs detailing cash | $4,301,127.00 |

| | |
|---|---|
| in transactions purchasing gaming instruments | |
| 83 CTR-Cs detailing cash out transactions redeeming gaming instruments and or receiving a check | $2,596,627.00 |
| Deposit of multiple casino checks into bank account(s) controlled by WATTS | $485,235.00 |
| Purchase of 513 Amy Ave | $16,649.51 |
| Purchase of 3426 Grand Avenue | $8,350.72 |
| Purchase of 12600 Black Thorn Trace | $74,111.37 |
| Purchase of 2006 BMW 750I | $13,980.00 |
| Purchase of 2006 Audi A8 | $10,105.00 |
| Purchase of 2109 Date St. | $12,232.00 |
| Purchase of 3512 Greenwood | $15,535.81 |

See also Attachment A to this Affidavit, incorporated herein by reference, which details the financial transactions (divided by cash in and cash out of the casinos) which form the basis of well over 200 money laundering violations (Title 18 U.S.C. §§ 1956 and 1957) committed by WATTS using casinos.

### Expenditures

78.  During 2014-2016, WATTS spent at least $2,100,000.00.  The computation of his expenditures include, but are not limited to, the purchase of six (6) properties from 2014-2016 (totaling $59,979.41), the purchase of at least 26 cars with currency in 2014 (totaling $97,130.50), and incurring gambling losses in excess of $1,100,000.00 from 2014 through 2016.

79.   WATTS also had a cash hoard over $428,000.00 (defendant property), which was seized subsequent to his arrest on 7/2/16, contents of his Kentucky Telco account were also seized 6 days later on 7/8/16 (defendant property), making the total known amount of money he had available to him around the time of his arrest over $517,000.00.

80.   Beginning in August of 2016, Dante WATTS, through his legal representative James A. Earhart, filed multiple claims with the DEA, which WATTS stated the seized assets belonged to him and was earned by him through his cleaning business, commercial and residential real estate, wages, commissions, and fees from employment.

81.   As discussed previously, WATTS reported income of $140,870.00 during the years 2014-2015 on his US Individual Income Tax returns, and deposited $253,837.00 in 2016. WATTS only reported income from his cleaning business, and did not report any wages, commissions, or fees on the 2014 and 2015 returns.  WATTS spent at least $2,100,000.00 during 2014 through 2016.  Even after all the expenditures through his arrest date on 7/2/2014, WATTS still was maintaining a cash hoard of at least $517,000.00.

### Conclusion

82.   Based on the information gathered during this investigation to date, WATTS earned most if not all of his income from drug trafficking and he used gambling casinos, and the purchase of real property and automobiles to launder the proceeds of the drug sales. Evidence gathered to date shows that he has no legitimate source of income.  All of the rental properties were purchased with drug trafficking proceeds (directly and indirectly), and thus the income from these properties are traceable to drug trafficking and money laundering.  Even assuming WATTS earned some legitimate income from his cleaning

business and rental income (not related to the distribution of illegal narcotics), any

legitimate money is de minimis compared to the over four (4) million dollars WATTS ran

through the casinos and is inextricably commingled with his illegally derived income.

83.   There is probable cause to believe that the defendant property listed above and in the

Complaint is subject to forfeiture to the United States, as property directly and indirectly

traceable to drug trafficking (both facilitating and proceeds thereof) and as property

involved in and traceable to money laundering.  Consequently, the property is subject to

forfeiture under 18 U.S.C. § 981(a)(1)(A) and (C), 18 U.S.C. § 1956, 18 U.S.C. § 1957, 21

U.S.C. §§ 841 and 846, and 21 U.S.C. § 881.

AFFIANT FURTHER SAYETH NOT

Special Agent KARL P. LARSON
Internal Revenue Service

# Attachment A in support of Affidavit

| Date | CASH IN Transactions Purchase of Casino Chips, etc | Currency Exchange | Bill Inserted into devices | | CASH OUT Transactions Redemption of Casino Chips, etc | Currency Exchanges | Negotiable Instrument Cashed |
|---|---|---|---|---|---|---|---|
| 4/4/2014 | $ 10,770.00 | | | | | | |
| 4/15/2014 | $ 14,600.00 | | | | | | |
| 4/26/2014 | $ 14,075.00 | | | | | | |
| 4/27/2014 | $ 14,600.00 | | | | | | |
| 5/1/2014 | $ 14,600.00 | | | | | | |
| 6/29/2014 | | | | | $ 14,803.00 | | |
| 7/3/2014 | $ 11,580.00 | | | | | | |
| 7/4/2014 | $ 21,600.00 | | | | $ 17,000.00 | | |
| 7/5/2014 | $ 14,800.00 | | | | | | |
| 7/12/2014 | | | | | $ 23,500.00 | | |
| 7/14/2014 | $ 14,750.00 | | | | | | |
| 7/16/2014 | | | | | $ 18,550.00 | | |
| 7/18/2014 | | | | | $ 23,435.00 | | |
| 7/23/2014 | $ 15,610.00 | | | | | | |
| 7/29/2014 | $ 11,000.00 | | | | | | |
| 8/3/2014 | $ 22,911.00 | | | | | | |
| 8/10/2014 | $ 11,030.00 | | | | $ 19,100.00 | | |
| 8/12/2014 | $ 14,730.00 | | | | | | |
| 8/16/2014 | | | | | $ 24,700.00 | | |
| 8/18/2014 | $ 14,970.00 | | | | $ 9,500.00 | | |
| 8/19/2014 | | | | | $ 13,420.00 | | |
| 8/20/2014 | $ 11,100.00 | | | | $ 18,500.00 | | |
| 8/22/2014 | | | | | $ 11,921.00 | | |
| 8/23/2014 | $ 17,500.00 | | | | | | |
| 8/24/2014 | $ 13,940.00 | | | | | | |
| 8/25/2014 | $ 23,060.00 | | | | | | |
| 8/28/2014 | $ 10,505.00 | | | | | | |
| 8/30/2014 | $ 11,600.00 | | | | | | |
| 8/31/2014 | $ 27,660.00 | | | | | | |
| 9/6/2014 | $ - | | | | $ 13,075.00 | | |
| 9/7/2014 | $ 12,200.00 | | | | | | |
| 9/12/2014 | | | | | $ 18,000.00 | | |
| 9/13/2014 | $ 13,500.00 | | | | $ 12,290.00 | | |
| 9/14/2014 | $ 20,185.00 | | | | $ 27,524.00 | | |
| 9/14/2014 | $ 11,100.00 | | | | | | |
| 9/17/2014 | $ 10,900.00 | | | | $ 28,720.00 | | |
| 9/20/2014 | $ 22,820.00 | | | | | | |
| 9/23/2014 | $ 10,120.00 | | | | | | |
| 9/26/2014 | $ 14,850.00 | | | | $ 8,800.00 | | |
| 10/1/2014 | $ 11,020.00 | | | | | | |
| 10/6/2014 | $ - | | | | $ 12,980.00 | | |
| 10/8/2014 | $ 13,920.00 | | | | | | |
| 10/11/2014 | $ 15,170.00 | | | | | | |
| 10/13/2014 | $ - | | | | $ 12,064.00 | | |
| 10/15/2014 | $ - | | | | $ 10,500.00 | | |
| 10/17/2014 | $ - | | | | $ 26,300.00 | | |
| 10/19/2014 | $ 11,240.00 | | | | | | |
| 10/20/2014 | $ 15,640.00 | | | | | | |
| 10/24/2014 | $ 12,260.00 | | | | | | |
| 10/25/2014 | $ 10,270.00 | | | | | | |
| 10/26/2014 | | | | | $ 21,125.00 | | |
| 10/27/2014 | | | | | $ 19,851.00 | | |
| 10/28/2014 | | | | | $ 20,700.00 | | |
| 10/30/2014 | $ 14,060.00 | | | | | | |
| 10/31/2014 | $ 17,960.00 | | | | $ 11,164.00 | | |
| 11/1/2014 | $ 11,700.00 | | | | $ 31,125.00 | | |
| 11/2/2014 | $ 22,500.00 | | | | $ 30,000.00 | | |
| 11/3/2014 | $ 21,325.00 | | | | | | |
| 11/6/2014 | $ 12,900.00 | | | | | | |
| 11/8/2014 | $ 12,740.00 | | | | | | |
| 11/9/2014 | | | | | $ 25,720.00 | | |
| 11/10/2014 | $ 16,650.00 | | | | | | |
| 11/11/2014 | $ 32,120.00 | | | | | | |
| 11/13/2014 | $ 13,700.00 | | | | | | |
| 11/15/2014 | $ 12,080.00 | | | | $ 36,000.00 | | |
| 11/16/2014 | $ 13,995.00 | | | | $ 16,100.00 | | |
| 11/17/2014 | $ 10,025.00 | | | | | | |
| 11/18/2014 | $ 11,500.00 | | | | $ 28,275.00 | | |
| 11/19/2014 | $ 31,100.00 | | | | $ 32,475.00 | | |
| 11/20/2014 | $ 14,400.00 | | | | | | |
| 6/30/2015 | $ - | | | | $ 22,600.00 | | |
| 7/12/2015 | $ - | | | | $ 39,918.00 | | |
| 7/13/2015 | $ - | | | | $ 23,826.00 | | |
| 7/19/2015 | $ 14,700.00 | | | | | | |
| 7/21/2015 | $ 12,600.00 | | | | | | |

Attachment A

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 79 | 8/16/2015 | $ 15,050.00 | | | | | | |
| 80 | 9/18/2015 | $ 28,480.00 | | | | | | |
| 81 | 9/19/2015 | $ 15,760.00 | | | | | | |
| 82 | 9/20/2015 | $ 23,300.00 | | | | | | |
| 83 | 9/21/2015 | $ 11,000.00 | | | | $ 49,801.00 | | $ 4,900.00 |
| 84 | 9/22/2015 | $ - | | | | | | |
| 85 | 9/23/2015 | $ 12,100.00 | | | | $ 12,650.00 | | |
| 86 | 9/25/2015 | $ | | | | $ 21,681.00 | | |
| 87 | 9/29/2015 | $ - | | | | $ 25,800.00 | | |
| 88 | 10/2/2015 | $ 20,700.00 | | | | $ 16,965.00 | | |
| 89 | 10/3/2015 | $ - | | | | | | |
| 90 | 10/5/2015 | $ - | | | | $ 18,510.00 | | |
| 91 | 10/9/2015 | $ 31,600.00 | | | | $ 44,500.00 | | |
| 92 | 10/10/2015 | $ 27,700.00 | | | | | | |
| 93 | 10/12/2015 | $ 28,600.00 | | | | | | |
| 94 | 10/14/2015 | $ 20,000.00 | | | | | | |
| 95 | 10/17/2015 | $ 36,300.00 | | | | | | |
| 96 | 10/18/2015 | $ 10,170.00 | | | | | | |
| 97 | 10/19/2015 | $ 37,670.00 | | | | | | |
| 98 | 10/20/2015 | $ 25,200.00 | | | | | | |
| 99 | 10/22/2015 | $ 33,120.00 | | | | | | |
| 100 | 10/25/2015 | $ 24,250.00 | | | | | | |
| 101 | 10/26/2015 | $ 21,470.00 | | | | | | |
| 102 | 11/1/2015 | $ 23,000.00 | | | | | | |
| 103 | 11/4/2015 | $ 103,400.00 | | | | $ 38,855.00 | | $ 50,000.00 |
| 104 | 11/5/2015 | $ 14,700.00 | | | | | | |
| 105 | 11/7/2015 | $ 27,450.00 | | | | | | |
| 106 | 11/8/2015 | $ 29,900.00 | | | | | | |
| 107 | 11/10/2015 | $ 17,000.00 | | | | | | |
| 108 | 11/11/2015 | $ 12,500.00 | | | | | | |
| 109 | 11/13/2015 | $ 24,862.00 | | | | $ 53,165.00 | | |
| 110 | 11/14/2015 | $ 41,800.00 | | | | | | |
| 111 | 11/16/2015 | $ 43,900.00 | | | | | | |
| 112 | 11/20/2015 | $ 44,200.00 | | | | $ 200.00 | | $ 25,000.00 |
| 113 | 11/21/2015 | $ 93,600.00 | | | | $ 105,318.00 | | |
| 114 | 11/22/2015 | $ 25,500.00 | | | | | | |
| 115 | 11/24/2015 | $ 41,520.00 | | | | $ 15,000.00 | | |
| 116 | 11/25/2015 | $ 12,900.00 | | | | | | |
| 117 | 11/26/2015 | $ 20,970.00 | | | | $ 12,700.00 | | |
| 118 | 11/28/2015 | $ 20,680.00 | | | | | | |
| 119 | 11/29/2015 | $ 10,265.00 | | | | | | |
| 120 | 11/30/2015 | $ 15,900.00 | | | | | | |
| 121 | 12/1/2015 | $ 32,915.00 | | | | $ 2,940.00 | | $ 7,200.00 |
| 122 | 12/2/2015 | $ 16,300.00 | | | | $ 30,200.00 | | $ 8,500.00 |
| 123 | 12/3/2015 | $ 22,860.00 | | | | $ 54,144.00 | | $ 11,300.00 |
| 124 | 12/4/2015 | $ 17,575.00 | | | | $ 17,000.00 | | |
| 125 | 12/5/2015 | $ 21,390.00 | | | | | | |
| 126 | 12/6/2015 | $ 23,510.00 | | | | $ 22,685.00 | | |
| 127 | 12/7/2015 | $ 32,200.00 | | | | $ 29,615.00 | | |
| 128 | 12/8/2015 | $ 18,545.00 | | | | $ 17,401.00 | | |
| 129 | 12/9/2015 | $ 35,500.00 | | | | $ 3,400.00 | | $ 10,800.00 |
| 130 | 12/10/2015 | $ 20,880.00 | | | | $ 10,800.00 | | |
| 131 | 12/11/2015 | $ 29,570.00 | | | | | | |
| 132 | 12/12/2015 | $ 22,820.00 | | | | $ 3,325.00 | | $ 10,800.00 |
| 133 | 12/13/2015 | $ 19,850.00 | | | | $ 1,550.00 | | $ 9,500.00 |
| 134 | 12/19/2015 | $ 27,280.00 | | | | $ 10,800.00 | | |
| 135 | 12/21/2015 | $ 13,680.00 | | | | | | |
| 136 | 12/22/2015 | $ 12,870.00 | | | | $ 34,843.00 | | $ 3,300.00 |
| 137 | 12/23/2015 | $ 30,610.00 | | | | | | |
| 138 | 12/25/2015 | $ 42,420.00 | | | | | | |
| 139 | 12/26/2015 | $ 14,360.00 | | | | | | |
| 140 | 12/27/2015 | $ 22,250.00 | | | | $ 81,114.00 | | |
| 141 | 12/28/2015 | $ 24,600.00 | | | | $ 19,100.00 | | |
| 142 | 12/29/2015 | $ 32,820.00 | | $ 20,000.00 | | $ 61,100.00 | | $ 20,000.00 |
| 143 | 12/30/2015 | $ 42,100.00 | | | | $ 61,700.00 | | $ 50,000.00 |
| 144 | 12/31/2015 | $ 65,300.00 | | | | | | |
| 145 | 1/1/2016 | $ 49,040.00 | | | | | | |
| 146 | 1/2/2016 | $ 49,280.00 | | | | $ 1,090.00 | | $ 9,500.00 |
| 147 | 1/3/2016 | $ 22,195.00 | | | | | | |
| 148 | 1/4/2016 | $ 13,740.00 | | | | | | |
| 149 | 1/5/2016 | $ 13,600.00 | | | | $ 96,525.00 | | |
| 150 | 1/6/2016 | $ 37,100.00 | | | | $ 25,600.00 | | $ 9,500.00 |
| 151 | 1/7/2016 | $ 54,440.00 | | | | $ 20,000.00 | | |
| 152 | 1/8/2016 | $ 58,500.00 | | | | $ 7,822.00 | | $ 9,500.00 |
| 153 | 1/9/2016 | $ 14,360.00 | | | | | | |
| 154 | 1/10/2016 | $ 30,700.00 | | | | | | |
| 155 | 1/13/2016 | $ 36,480.00 | | | | | | |
| 156 | 1/15/2016 | $ 21,690.00 | | | | | | |
| 157 | 1/16/2016 | $ 20,550.00 | | | | | | |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 158 | 1/18/2016 | $ 16,750.00 | | | | | | |
| 159 | 1/21/2016 | $ 10,290.00 | | | | | | |
| 160 | 1/22/2016 | $ 17,560.00 | | | | | | |
| 161 | 1/23/2016 | $ - | | | | $ 43,813.00 | | |
| 162 | 1/24/2016 | $ 41,660.00 | | | | | | $ 20,000.00 |
| 163 | 1/25/2016 | $ 24,785.00 | | | | | | |
| 164 | 1/26/2016 | $ 33,180.00 | | | | | | |
| 165 | 1/26/2016 | $ 33,180.00 | | | | | | |
| 166 | 1/28/2016 | $ 18,255.00 | | | | | | |
| 167 | 1/30/2016 | $ 17,175.00 | | | | | | |
| 168 | 1/31/2016 | $ 12,130.00 | | | | | | |
| 169 | 2/1/2016 | $ 20,630.00 | | | | | | |
| 170 | 2/7/2016 | $ 11,870.00 | | | | | | |
| 171 | 2/8/2016 | $ 13,940.00 | | | | $ 16,505.00 | | |
| 172 | 2/9/2016 | $ 10,500.00 | | | | $ 115,475.00 | | |
| 173 | 2/10/2016 | $ 44,210.00 | | | | | | |
| 174 | 2/11/2016 | $ 23,700.00 | | | | $ 37,675.00 | | |
| 175 | 2/12/2016 | $ 29,900.00 | | | | | | |
| 176 | 2/13/2016 | $ 32,400.00 | | | | $ 45,135.00 | | |
| 177 | 2/14/2016 | $ 19,000.00 | | | | | | |
| 178 | 2/15/2016 | $ 30,070.00 | | | | | | |
| 179 | 2/16/2016 | $ 12,520.00 | | | | . | | |
| 180 | 2/17/2016 | $ 22,640.00 | | | | | | |
| 181 | 2/19/2016 | $ 30,345.00 | | | | | | |
| 182 | 2/24/2016 | $ 47,835.00 | | | | $ 25,135.00 | | |
| 183 | 2/25/2016 | $ 54,600.00 | | | | $ 44,835.00 | | |
| 184 | 2/26/2016 | $ 16,130.00 | | | | | | $ 20,000.00 |
| 185 | 2/27/2016 | $ 28,200.00 | | | | $ 22,865.00 | | |
| 186 | 2/28/2016 | $ 47,220.00 | | | | $ 57,100.00 | | |
| 187 | 2/29/2016 | $ 37,300.00 | | | | $ 30,000.00 | | |
| 188 | 3/4/2016 | $ 18,900.00 | | | | | | |
| 189 | 3/6/2016 | $ 18,570.00 | | | | | | |
| 190 | 3/9/2016 | $ 14,600.00 | | | | $ 11,829.00 | | |
| 191 | 3/10/2016 | $ 21,783.00 | | | | | | |
| 192 | 3/11/2016 | $ 12,205.00 | | | | | | |
| 193 | 3/12/2016 | $ 27,250.00 | | | | | | |
| 194 | 3/13/2016 | $ 33,750.00 | | | | $ 40,000.00 | | |
| 195 | 3/14/2016 | $ 62,180.00 | | | | | | |
| 196 | 3/15/2016 | $ 55,030.00 | | | | | | |
| 197 | 3/18/2016 | $ 32,840.00 | | | | | | |
| 198 | 3/19/2016 | $ 31,300.00 | | | | | | |
| 199 | 3/21/2016 | $ 54,400.00 | | | | $ 75,000.00 | | |
| 200 | 3/22/2016 | $ 15,650.00 | | | | | | |
| 201 | 3/23/2016 | $ 23,530.00 | | | | | | |
| 202 | 3/24/2016 | $ 28,700.00 | | | | | | |
| 203 | 3/25/2016 | $ 31,580.00 | | | | | | |
| 204 | 3/27/2016 | $ 47,126.00 | | | | | | |
| 205 | 3/29/2016 | $ 32,810.00 | | | | | | |
| 206 | 3/31/2016 | $ 21,600.00 | | | | | | |
| 207 | 4/1/2016 | $ 10,710.00 | | | | | | |
| 208 | | $ 4,301,127.00 | $ - | $ 20,000.00 | | $ 2,316,827.00 | $ - | $ 279,800.00 |
| 209 | | | | | | | | |
| 210 | 2014 | $ 810,941.00 | $ - | $ - | | $ 637,217.00 | $ - | $ - |
| 211 | 2015 | $ 1,716,022.00 | $ - | $ 20,000.00 | | $ 963,206.00 | $ - | $ 211,300.00 |
| 212 | 2016 | $ 1,774,164.00 | $ - | $ - | | $ 716,404.00 | $ - | $ 68,500.00 |
| 213 | | $ 4,301,127.00 | | $ 20,000.00 | | $ 2,316,827.00 | | $ 279,800.00 |
| 214 | | | | | | | | |